IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TONEY L. JULIUS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv899-WHA |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the court is Petitioner Toney L. Julius's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 1.[1]  After considering the parties' submissions, the record, and the applicable law, it is the RECOMMENDATION of the Magistrate Judge that Julius's § 2255 motion be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I.   INTRODUCTION

On July 29, 2012, Julius pled guilty under a plea agreement to possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); unlawful possession of cocaine, in violation of 18 U.S.C. § 844(a) (Count 2); and making a false statement to a government agent, in violation of 18 U.S.C. § 1001 (Count 3).  On January 22, 2013, the district court sentenced Julius to 74 months in prison, comprising concurrent terms of 33 months and 12 months on the firearm and drug possession counts followed by a consecutive term of 41 months

---

[1] References to document numbers ("Doc.") are to those assigned by the Clerk of Court to pleadings docketed in this civil action.  References to exhibits ("Gov. Ex.") are to exhibits submitted by the Government with its response and supplemental response to the § 2255 motion.  All page references are to those assigned by CM/ECF.

on the false statement count.  Julius did not appeal.[2]  On December 3, 2013, Julius filed this §
2255 motion, presenting a single claim of ineffective assistance of counsel.

## II.   DISCUSSION

Julius claims that his trial counsel was ineffective for failing to object to the calculation
in the presentence investigation report ("PSI") of his offense level for Count 3 of the indictment,
making a false statement in violation of 18 U.S.C. § 1001. Doc. 1 at 4; Doc. 1-1 at 6-10.

a.   Standard for Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test
announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that
"counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.
Second, the petitioner must show that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see
Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  A "reasonable probability is a
probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a
"strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314
(internal quotation marks omitted).  "Given the strong presumption in favor of competence, the
petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy
one." *Id*.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland*
inquiry, relief must be denied. *Strickland*, 466 U.S. at 687.  Thus, once a court decides that one

---

[2] The plea agreement contained a waiver provision whereby Julius waived his right to appeal or collaterally attack
his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

of the requisite showings has not been made, it need not consider whether the other prong has been met. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

    b.   <u>Factual Background Relevant to Julius's Claim</u>

The charge in Count 3 arose from actions by Julius following his arrest for the firearm possession and cocaine possession that formed the basis for Counts 1 and 2.  While in jail on the firearm and drug charges, Julius, in an attempt curry favor with prosecutors, proffered false statements to FBI agents wherein he claimed to have learned that a fellow inmate had put a "hit" out on a federal prosecutor and drug agent.  Agents reviewed a phone call from jail in which Julius told his brother that the inmate was offering $50,000 to perform the hit.  Julius's statements resulted in authorities conducting an aggressive week-long investigation into the alleged murder-for-hire plot, with numerous law enforcement agencies involved and a significant number of agents and prosecutors working around the clock.  When authorities subsequently confronted Julius with evidence indicating his story about the plot was untrue, Julius admitted he had fabricated the murder-for-hire story in an effort to obtain a better deal from prosecutors.

In calculating Julius's offense level for Count 3, the PSI first referred to the commentary for U.S.S.G. § 1B1.1, which provides, in relevant part:

> In the case of a particular statute that proscribes a variety of conduct that might constitute the subject of different offense guidelines, the Statutory Index may specify more than one offense guideline for that particular statute, and the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the account of which the defendant was convicted.

U.S.S.G. § 1B1.1, n.1; *see* PSI at 6 & 23.  The PSI then noted that the guideline sections for 18 U.S.C. § 1001 offenses (i.e., the false statement charge in Count 3) are found in U.S.S.G. § 2B1.1 (pertaining to various economic fraud offenses) and U.S.S.G. § 2J1.2 (pertaining to offenses involving the obstruction of justice). PSI at 6 & 23.  The PSI found that § 2J1.2, the

obstruction guideline, was the more appropriate guideline for Julius's offense conduct charged in Count 3. *Id*.  Finding that the obstruction involved "the investigation or prosecution of a criminal offense," the PSI applied the cross-reference from § 2J1.2(c)(1)[3] to U.S.S.G. § 2X3.1, the guideline pertaining to "accessory after the fact." *Id*.  Section § 2X3.1 calls for a base offense level that is 6 levels lower than the offense level for the underlying offense (i.e., the offense that is the object of the obstruction) but in no event less than 4 or greater than 30. U.S.S.G. § 2X3.1(a)(1)-(3).  Finding "conspiracy or solicitation to commit murder" to be the underlying offense that was the object of Julius's obstruction, the PSI referenced the guideline for that offense, U.S.S.G. § 2A1.5, which calls for a base offense level of 33 and a 4-level specific offense characteristic enhancement where "the offense involved the offer or receipt of anything of pecuniary value for undertaking the murder." *Id*.  Finding that the alleged murder-for-hire plot involved an offer of $50,000 for the hit, the PSI applied the 4-level enhancement to the base offense level of 33, for a total of 37. *Id*.  However, under § 2X3.1(a)(3), the adjusted offense level was adjusted to 30. *Id*.

Because the victims of the alleged plot were a federal prosecutor and drug agent, the PSI applied a 6-level victim-related enhancement under U.S.S.G. § 3A1.2(b), to bring Julius's subtotal adjusted offense level to 36. *Id*. at 25.  Julius was then granted a reduction of 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) & (b).  The end result of this calculation in the PSI was a total offense level of 33 for Count 3. *Id*. at 7 & 35.  This, combined with Julius's criminal history category of V, produced a guideline range of 210 to 261 months.  The combined statutory maximum sentence for Counts 1 through 3 was 192 months (120 months for Count 1,

---

[3] Section 2J1.2(c)(1) provides: "If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than determined above [in § 2J1.2(a) & (b)]." U.S.S.G. § 2J1.2(c)(1).

12 months for Count 2, and 60 months for Count 3).  Thus, effectively, the guideline range in Julius's case was the statutory maximum of 192 months.[4]

In written objections to the PSI and in a sentencing memorandum filed with the district court, Julius's trial counsel argued that the guideline for economic fraud offenses in U.S.S.G. § 2B1.1, and not the obstruction guideline in U.S.S.G. § 2J1.2, was the appropriate guideline for determining the base offense level for the false statement offense charged in Count 3. Gov. Ex. 1 at 1-2; Gov. Ex. 3 at 2-5.  In addition, trial counsel argued that because the murder-for-hire plot was fabricated and did not in fact exist, the PSI incorrectly applied the cross-reference from § 2J1.2(c)(1) to § 2X3.1 to find "conspiracy or solicitation to commit murder" to be the offense that was the object of Julius's obstruction. *Id*.

After Julius's counsel filed his sentencing memorandum and objections to the PSI, the government and Julius negotiated a new, revised plea agreement under which the parties agreed, among other things, that Julius's sentence should be no less than 72 months of imprisonment and no greater than 105 months of imprisonment. Gov. Ex. G at 5; *see* Gov. Ex. F at 4.  Thus, under the revised plea agreement, the parties agreed that Julius was entitled to a substantial downward variance from his calculated guideline range.

At the sentencing hearing, the district court asked Julius if he had any objections to the PSI, and Julius stated that he did not, and that he "would like to withdraw all objections to the presentence report through [his] attorney." Gov. Ex. F at 5.  Julius's counsel then confirmed that all objections to the PSI were withdrawn, including the objections to the calculation of Julius's offense level for Count 3. *Id*. at 6.   Counsel noted that "one of the main reasons" he was

---

[4] *See* 18 U.S.C. § 922(g); 21 U.S.C. § 844(a); 18 U.S.C. § 1001.  Pursuant to U.S.S.G. § 5G1.2(d), "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."

withdrawing the objections to the PSI was that the government was not insisting on a sentence commensurate with the cross-reference to the murder-for-hire guideline and had agreed to a significantly lower sentencing range. *Id*. at 9-10.

Thereafter, the district court adopted the factual statements in the PSI, finding that the offense level was 33, that Julius's criminal history category was V, that his guideline range was 210 to 261 months, and that the statutory maximum sentence for the three counts of conviction was 192 months.  The court then imposed a sentence of 74 months of imprisonment, comprising concurrent terms of 33 months and 12 months on Counts 1 and 2 and a consecutive term of 41 months on Count 3.  Although the court, in imposing sentence, did not expressly state that it was granting a variance, the only reasonable interpretation of the sentencing colloquy is that the 74-month sentence imposed by the court constituted a substantial downward variance from the guideline range calculated in the PSI.

   c.   Analysis

In claiming that his trial counsel rendered ineffective assistance, Julius essentially repeats the arguments raised by his trial counsel in his objections to the PSI (and later withdrawn) and in the sentencing memorandum filed prior to the sentencing hearing.  Thus, Julius argues that his counsel should have persisted in arguing that (1) the guideline for economic fraud offenses in § 2B1.1, and not the obstruction guideline in § 2J1.2, was the appropriate guideline for determining the base offense level for the false statement offense charged in Count 3; and (2) because the murder-for-hire plot was fabricated and did not in fact exist, the PSI incorrectly applied the cross-reference from § 2J1.2(c)(1) to § 2X3.1 to find "conspiracy or solicitation to commit murder" to be the offense that was the object of his obstruction. Doc. 1 at 4; Doc. 1-1 at 6-10.

6

Julius's attempt to obtain post-conviction relief fails for several reasons.  First, Julius demonstrates no error in the PSI's finding that § 2J1.2, the guideline for obstruction of justice, was the correct guideline for the offense conduct charged in Count 3.  Nor does he demonstrate that the PSI incorrectly applied the cross-reference from § 2J1.2(c)(1) to § 2X3.1 to find "conspiracy or solicitation to commit murder" to be the offense that was the object of his obstruction.  Next, and more importantly, under the revised plea agreement, the PSI's calculation of Julius's offense level for Count 3 did not dictate the sentence actually imposed, as Julius received a substantial downward variance at sentencing.  Had the government insisted that the PSI calculation be strictly applied in Julius's case, Julius faced a sentence of 192 months of imprisonment.   Instead, because a variance was granted (with no objection from the government), Julius received a sentence of 74 months—almost 10 years less than the guideline range calculated in the PSI.  The primary basis for Julius's counsel's decision to withdraw the objections to the PSI was that the government, under the revised plea agreement, had agreed to a sentencing range far lower than that calculated in the PSI.  With this agreement in place, there was no benefit to be gained by his council's persisting in the objections to the calculation of the offense level for Count 3.  And the record demonstrates Julius expressly acceded to his counsel's strategic decision by advising the district court at the sentencing hearing that he wished to withdraw his objections.   Under the circumstances, Julius has not shown that his counsel's representation fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 689.  Finally, Julius has not proffered some other way his offense level for Count 3 might have been calculated to produce a reasonable likelihood that the sentence imposed by the district court would have been less than the 74-month sentence actually imposed in his case.  Thus, Julius also fails to satisfy the prejudice prong of the *Strickland* test. *See id.* at 694.

For the reasons set forth above, Julius is not entitled to relief on his claim of ineffective assistance of counsel.

### III.   CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge that Julius's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) be DENIED, and this case be DISMISSED with prejudice.

It is further ORDERED that the parties shall file any objections to this Recommendation or before **February 2, 2016**.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 19th day of January, 2016.


    /s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE